# 12 CV 04379

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

TED JOHNSON,                                    Case No.

    Plaintiff,                                  COMPLAINT

    -against-                                   JURY TRIAL
                                     DEMANDED

THE CITY OF NEW YORK, POLICE
OFFICER ANTHONY ROSADO,
POLICE OFFICER THOMAS WOODS,
and SERGEANT LUIS MARINES,

    Defendants.



RECEIVED
JUN - 4 2012
PRO SE OFFICE

------------------------------------------------------X

Plaintiff Pro Se, Ted Johnson, complaining against the Defendants herein, alleges as follows:

## STATEMENT OF THE CASE

1. This is an action for money damages pursuant to 42 U.S.C. 1983 arising from the unlawful arrest on December 2, 2009 by the individual Defendants, the malicious prosecution of the Plaintiff in State criminal proceedings from December 3, 2009 to October 22, 2010, and the municipal Defendant's pattern and practice of targeting the Plaintiff for false arrest and malicious prosecution from the late 1970's through October 22, 2010.

## THE PARTIES

2. Plaintiff is a natural person domiciled in the State of New York, Bronx

County, at all relevant times herein.

3. Defendant City of New York ("City") is a municipality having its principal place of business in the State and County of New York whose police officers have targeted Plaintiff for false arrest and malicious prosecution since the late 1970's through October 22, 2010.

4. Defendant Anthony Rosado ("Rosado") is and was at all relevant times a police officer employed by the New York City Police Department ("NYPD"), and assigned to Transit District 4, having his principal place of business in the State and County of New York.

5. Defendant Thomas Woods ("Woods") is and was at all relevant times a police officer employed by the NYPD, and assigned to Transit District 4, having his principal place of business in the State and County of New York; Defendant Woods was at all relevant times the partner of Defendant Rosado.

6. Defendant Sergeant Luis Marines ("Sgt. Marines") is and was at all relevant times a police officer employed by the NYPD, and assigned to Transit District 4, having his principal place of business in the State and County of New York; Defendant Marines was at all relevant times the supervising police officer to Defendants Rosado and Woods.

2

JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction by reason of a federal question arising under 42 U.S.C. 1983 and 42 U.S.C. 1343.

8.  This Court has personal jurisdiction over the Defendants because they maintain their principal places of business in this Judicial District.

9.  Venue is properly before this Court because the parties' residences and/or principal places of business are located in this Judicial District and the facts giving rise to this action occurred in this Judicial District.

FACTS GIVING RISE TO THE WITHIN ACTION

10. Plaintiff is a convicted sex offender having been convicted of sexual abuse in the third degree (NY PL 130.55) in 1981, 1995, 1997 and 1998, and persistent sexual abuse (PL 130.53) in 2002.

11. Plaintiff admittedly committed the offenses in 1981 and the 1990's having pled guilty to those crimes, but was unjustly convicted in 2002 solely because of the false trial testimony of non-parties Police Officers Shawn Wilkinson and Alex Torres.

12. As a result of that unjust conviction, Plaintiff was committed to the custody of the NYS Department of Correctional Services ("DOCS") in August 2003 and released to parole supervision on November 20, 2009.

13. From the late 1970's through December 2, 2009, Plaintiff has been

3

targeted for false arrest and malicious prosecution by various police officers of the NYPD.

14. From the late 1970's through December 2, 2009, Plaintiff has been arrested approximately thirty times by various police officers of the NYPD and charged with committing one or more sex offenses in the New York City subway system.

15. The vast majority of those arrests culminated in state court criminal proceedings that were finally dismissed in Plaintiff's favor because the arresting officers failed to attend court proceedings with respect to their false arrests.

16. Plaintiff was targeted for such arrests because he is an African-American male,[1] and after 1981, the police officers who targeted him for such arrests were aware that Plaintiff was convicted of a sex offense.

17. In the late 1980's or early 1990's, the New York Times published an expose describing how African-American males in the subway system were targeted for false arrest for various sex offenses; according to one woman, she was totally unaware that she was the "victim" of a sex offense until she received papers in the mail from the NYC Criminal Court.

---------------------------------------------------------------------------------

1. Plaintiff is also part Cherokee American Indian but that may not have been apparent to the police officers who targeted him for false arrest and malicious prosecution.

4

17. On the afternoon of December 2, 2009, Plaintiff was detained in the subway system by two police officers of the NYPD who are not parties to this action without reasonable suspicion to detain him.

18. Those police officers, who were aware that Plaintiff is a convicted sex offender, searched Plaintiff's person and property without probable cause to do so, but did not arrest Plaintiff because too many passengers were present on the subway platform who would readily confirm that Plaintiff committed no crime or offense.

19. On December 2, 2009, at approximately 6:20 PM, Plaintiff was a passenger on a downtown-bound "6" train that pulled into the 59th Street Station.

20. Plaintiff, who was standing by a subway door facing outward toward the window of the subway door, saw Defendant Rosado standing on the subway platform.

21. Defendant Rosado was facing the subway door and his face "turned white as a ghost" when he saw Plaintiff, who he recognized as a convicted sex offender.

22. When the subway doors opened, Defendant Rosado entered the subway car where Plaintiff was standing and Defendant had an expression on his face as if to say, "who did he [Plaintiff] touch."

5

23. As Defendant Rosado entered the subway car he intentionally and maliciously bumped into Plaintiff without apologizing or saying "excuse me."

24. After Defendant Rosado entered the subway car he approached a white female passenger, who Plaintiff later learned to be non-party Kathleen Maloney ("Maloney"), in a menacing manner causing Ms. Maloney to be visibly uncomfortable.

25. As Defendant Rosado was approaching Ms. Maloney and looking her up and down in a menacing manner, Ms. Maloney looked over to Plaintiff and made an expression as if to say, "what's wrong with him."

26. Plaintiff at no time touched Ms. Maloney on the subway train, but he was standing at least three feet away from her.

27. When the subway train pulled into Grand Central Station ("GCS"), Ms. Maloney and another female exited the train and Defendant Rosado followed them in "hot pursuit."

28. Although Defendant Rosado claimed to be a police officer, he was not in uniform and his actions in following Ms. Maloney and the other female in GCS made Ms. Maloney very uncomfortable and fearful for her safety, and the female accompanying Ms. Maloney admonished Defendant Rosado to "stop harassing" Ms. Maloney.

29. Defendant Rosado convinced Ms. Maloney and the other female that he is a police officer by showing them his police badge, radio and handcuffs.

30. Defendant Rosado asked Ms. Maloney if "the man on the subway" touched her inappropriately on the subway and did not allow her to leave GCS station until she told him that "the man on the subway" touched her in an inappropriate manner, thereby coercing Ms. Maloney to be a complaining witness.

31. Defendant Rosado did not speak to or interview the female accompanying Ms. Maloney because he was aware that Plaintiff committed no sex offense on the subway and that the other female would tell him that Plaintiff did not touch Ms. Maloney in any way.

32. On December 2, 2009, at approximately 6:30 PM, Defendant Rosado issued a radio transmission to Defendant Woods directing that Plaintiff be arrested and taken into custody.

33. On December 2, 2009, as the train was pulling into the 33rd Street station, Defendants Woods and Marines arrested Plaintiff and pulled him off the subway after the doors opened.

34. Defendant Woods falsely swore that Plaintiff made an oral statement, "oh fuck," at the time he arrested Plaintiff; anyone who knows Plaintiff is aware that he never uses profanity.

7

35. Defendant Woods subsequently admitted that Plaintiff made no statement when he arrested Plaintiff thereby obviating the need for a pre-trial hearing to suppress that statement.

36. Defendant Woods also falsely swore that when the train was in GCS, Plaintiff saw Officer Rosado speaking to Ms. Maloney on the platform, and Plaintiff exited the train and ran down the platform in an attempt to escape, but that Plaintiff furthered that "escape plan" by entering another car of the same subway train and touching another female in an inappropriate manner.

37. Defendant Woods' sworn account was false in that Defendant Rosado testified at Plaintiff's trial that Ms. Maloney did not speak to him until they reached the upper level of GCS, meaning that Plaintiff could not have seen Defendant Rosado speaking to Ms. Maloney, as falsely averred to by Defendant Woods.

38. Defendant Woods testified at Plaintiff's trial that he pursued Plaintiff as he was running down the platform but did not detain Plaintiff when he caught up to him, which Officer Woods had the legal right to do if Plaintiff really was suspected of having committed a sex offense on the subway.

39. Defendant Woods also testified at Plaintiff's trial that he saw Plaintiff commit a sex offense right in his presence but did not arrest Plaintiff; if Officer Woods is to be believed, he shirked his sworn duty to make an arrest

8

for a crime he said he saw Plaintiff commit in his presence.

40. Defendant Marines confirmed at Plaintiff's trial that Defendants Rosado and Woods' trial testimony was false in that he testified that when the train doors opened at 59th Street, Plaintiff was not pressing himself against Ms. Maloney, as Defendants Rosado and Woods falsely swore to, but that Plaintiff exited the train to let other passengers off, and that he did not stand behind Ms. Maloney when he re-entered the train.

41. Ms. Maloney confirmed at Plaintiff's trial that Defendants Rosado, Woods and Marines' trial testimony was false in that Ms. Maloney testified that she boarded the train at the 77th Street station, she felt a man, who looked nothing like Plaintiff press against her for about thirty seconds, but the incident ended at the 68th Street station when other passengers got off the train thereby enabling her to move away from the man; by reason of the foregoing, Defendants Rosado, Woods and Marines could not have seen Plaintiff standing behind Ms. Maloney at the 59th Street station.

42. Ms. Maloney did not identify Plaintiff at his trial as the man who pressed against her on December 2, 2009.

43. Defendant Rosado falsely swore prior to Plaintiff's trial that Ms. Maloney made a confirmatory identification of Plaintiff at GCS; as Defendant Rosado subsequently admitted that no such identification

9

was ever made on December 2, 2009, the need for a pre-trial hearing to suppress that out-of-court identification was obviated.

44. As a result of Defendant Rosado's false account, Plaintiff was held for arraignment in the Criminal Court of the City of New York, New York County, where excessive bail of $100,000 was imposed on December 3, 2009, which was reduced to $5,000 on December 8, 2009, but Plaintiff could not make that bail either.

45. On December 3, 2009, Defendant Rosado signed a sworn Criminal ~~Court~~ Complaint wherein he falsely stated that he saw Plaintiff rub his erect penis against Ms. Maloney's buttocks.

46. Defendant Rosado subsequently admitted on December 8, 2009 that he did not see Plaintiff rub his erect penis against Ms. Maloney's buttocks and that ~~he~~ his prior sworn account was false; Defendant acknowledged at Plaintiff's trial that his December 3, 2009 statement was false, but was most hostile to Plaintiff's defense counsel as if to say, "I lied, so what."

47. As a result of Defendant's false account, a parole hold was issued by the NYS Division of Parole ("Parole") and Plaintiff was charged with violating the terms and conditions of his parole supervision.

48. Defendants Rosado and Woods gave false testimony against Plaintiff at a parole revocation hearing on May 17, 2010 which resulted in a Parole

10

determination that Plaintiff violated the terms and conditions of his parole

supervision, as well as a recommendation that Plaintiff be held until he

maximum expiration date, November 12, 2012.

49. As a result of Defendants Rosado and Woods' false testimony at the

parole revocation hearing, Plaintiff is now languishing like Bhudda in a ten-

foot cell in a DOCS facility; at this time, Plaintiff is confined at the

Shawangunk Correctional Facility and his Department Inmate Number

("DIN") is 03-A-4407.

50. Ms. Maloney refused to testify at the parole revocation hearing as she

knew the entire proceeding was based on a lie; the parole specialist (the

prosecutor at a parole revocation hearing) advised Administrative Law

Judge John Cox on June 2, 2010 that Ms. Maloney refused to provide an

address where a subpoena compelling her attendance could be served;

however, the parole specialist could have obtained that address from

Defendant Rosado, who testified that he took down Ms. Maloney's contact

information at GCS on December 2, 2009, but, upon information and belief,

Defendant Rosado advised the parole specialist to proceed in Ms. Maloney's

absence as he knew Ms. Maloney would not back up his false account.

51. As a result of Defendant Rosado's false accusations on December 2,

2009, Plaintiff was indicted by a Grand Jury in August 2010 and held for

11

trial on the charge of, inter alia, sexual abuse in the third degree.

52. At Plaintiff's trial, Defendants Rosado and Woods testified that they did not see Plaintiff commit any sex offense on the subway; Defendant Marines also testified that he did not see Plaintiff commit a sex offense.

53. Defendant Marines was actually aware that Plaintiff committed no crime on December 2, 2009, yet he violated his sworn duty as a supervising police officer to prevent his underlings, Defendants Rosado and Woods, from arresting Plaintiff in the absence of any probable cause; Defendant Marines testified that he was the supervising officer on December 2, 2009, but in actuality, Defendant Rosado was functioning as the supervising officer, and Defendants Woods and Marines simply went along with Officer Rosado's false account, and Defendant Woods made some false accounts of his own.

54. Defendant Rosado was actually aware that Plaintiff committed no crime on December 2, 2009, but he directed Defendant Woods to arrest Plaintiff without probable cause.

55. Defendant Woods was actually aware that Plaintiff committed no crime on December 9, 2009, but he arrested Plaintiff without probable cause.

56. On October 22, 2010, a Jury in Supreme Court, New York County, returned a verdict of not guilty on the charge of sexual abuse in the third degree, and the criminal proceeding was terminated in Plaintiff's favor.

12

## AS AND FOR A FIRST CLAIM FOR RELIEF

57. Plaintiff repeats each and every allegation contained in Paragraphs "1" through "56" as if set forth again at length.

58. The NYPD has and has had since the late 1970's an unconstitutional policy, pattern and practice of targeting African-American men for arrest for a sex offense in the NYC subway system solely on account of the race of the target, in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

59. The NYPD has and has had since the late 1970's an unconstitutional policy, pattern and practice of targeting Plaintiff for arrest for a sex offense solely because he is an African-American male, in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

60. By reason of the foregoing, Plaintiff has been damaged in the sum of $5,000,000.

61. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant City in the sum of $5,000,000.

62. Since there is a reasonable likelihood that Plaintiff will continue to be targeted for false arrest and malicious prosecution upon his release by police officers of the NYPD Transit Division because of his race, Plaintiff is entitled to the entry of a permanent injunction enjoining the NYPD from

13

detaining Plaintiff in the absence of reasonable suspicion, and/or arresting and/or searching Plaintiff's person and property in the absence of probable cause; and the appointment of Court-appointed monitor to ensure that the NYPD Transit Division refrains from further violations of Plaintiff's clearly established rights under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment, and to adopt written policies and procedures to prevent such further violations.

AS AND FOR A SECOND CLAIM FOR RELIEF

63. Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "62" as if set forth again at length.

64. On December 2, 2009, Defendant Rosado directed Defendants Woods and Marines to falsely arrest Plaintiff in the absence of probable cause, and Defendants Woods and Marines falsely arrested Plaintiff in the absence of probable cause on December 2, 2009.

65. Defendants Rosado, Woods and Marines were actually aware, and should have been aware that there was no probable cause to arrest Plaintiff on December 2, 2009.

66. Plaintiff did not consent to the false arrest and confinement.

67. As a result of being falsely arrested, Plaintiff was held in confinement for over twenty-four (24) hours from December 2 to December 3, 2009.

68. By reason of the foregoing, Plaintiff has been damaged in the sum of $100,000.

69. By reason of the foregoing, Plaintiff is entitled to compensatory damages of $100,000 from the individual Defendants, punitive damages from Defendant Rosado in the sum of $1,000,000, punitive damages in the sum of $750,000 from Defendant Marines, and punitive damages in the sum of $500,000 from Defendant Woods.

### AS AND FOR A THIRD CLAIM FOR RELIEF

70. Plaintiff repeats each and every allegation contained in Paragraphs "1" through "69" as if set forth again at length.

71. Between December 3, 2009 and October 22, 2010, Defendant Rosado maliciously prosecuted Plaintiff in State Court criminal proceedings in the absence of probable cause.

72. The accusatory instrument necessary to initiate the State Court criminal proceedings against Plaintiff was primarily based upon Defendant Rosado's false sworn statement.

73. Defendant Rosado was aware that there was no probable cause for the prosecution and he was motivated solely by malice.

74. Between December 8, 2009 and October 22, 2010, Defendant Woods maliciously prosecuted Plaintiff in State Court criminal proceedings in the

15

absence of probable cause.

75. During the course of the State Court criminal proceedings, Defendant Woods provided false accounts that Plaintiff attempted to flee when he saw Defendant Rosado speaking to Ms. Maloney at GCS, and that Plaintiff sexually abused another woman in his presence.

76. Between March 1, 2010 and October 22, 2010, Defendant Marines maliciously prosecuted Plaintiff in State Court criminal proceedings in the absence of probable cause.

77. Defendants Woods and Marines were aware that there was no probable cause for the prosecution and they were motivated solely by malice.

77. The State Court criminal proceedings were finally terminated in Plaintiff's favor on October 22, 2012 when the Jury returned a verdict of not guilty.

78. By reason of the foregoing, Plaintiff has been damaged in the sum of $1,000,000.

79. By reason of the foregoing, Plaintiff is entitled to compensatory damages of $1,000,000 from the individual Defendants, punitive damages in the sum of $10,000,000 from Defendant Rosado, punitive damages in the sum of $5,000,000 from Defendant Marines, and punitive damages in the sum of $2,500,000 from Defendant Woods.

16

CAUSES OF ACTIONS PROVEN

UPON THE RECORD

## FIRST CAUSE OF ACTION
### FALSE ARREST

This cause of action and complaint will demonstrate by means of of reference to the grand jury minutes,trial minutes and parole minutes in regards to the testimonies of defendant(s) Officer-Rosado, Woods and Marines, especially Rosado, will demonstrate that that each defendant fabricated false information to the District Attorney's Office in order to establish probable cause for the arrest of Claimant on December 2, 2009,approx. 6:30 PM, south-bound No. 6 train at 33rd Street.

Defendants although claiming to have been standing on the same subway platform of the 59th Street train station claiming they saw the same thing(in that Claimant was standing closely behind a Ms. Kathleen Maloney with his groin area against her buttocks as the train was pulling into the 59th Street station),however, the record will show each defendant not only gave various diff-erent and conflicting stories to that of eachother, it will al-so show that complaining witness(Maloney)'s own trial testimony and grand jury testimony according to the October 20, 2010 trial transcripts page 20 at line 25 at line 1; page 47 at lines 10-23; page 22 at lines 12 and 13; page 51 at lines 15 to 17 and the March 18, 2010 grand jury testimony of cw according to page 5 at lines 2 to 3 of the transcripts; cw August 13, 2010 grand jury testimony page 76 at lines 2 to 4 of the transcripts and cw October 20, 2010 trial testimony page 49 at lines 20 to 24 of the transcripts(in that the 30 second inccident between cw and the man began when she got on the train at 77th Street and ended at the "NEXT STOP 68th Street" and she(Ms. Maloney)made a full move away from the man around the pole to her friend and they once again, began speaking with eachother).  These are testimonies by cw that not only contradict defendants fabricated various false accounts, but it also show that cw testimony made it impossible for each defendant to have seen claimant standing behind cw as the train was pulling into 59th Street nor the 51st Street station, because cw stated that the inccident ended at the 68th Street station.

The actual arrest of claimant took place at the 33rd Street train
station about 6:30 to 6:40 PM when Rosado radioed to his partners
Woods and Marines false information that there was probable cause
to make an arrest of Claimant by stating that a Ms Kathleen Mal-
óney gave an ID point-out of claimant, that Claimant touched her
buttocks with his erect penis on the 6 train between 68th Street
and the 59th Street train stations.  Rosado also falsely stated
that he witnessed the event described above(as per his Dec. 2,2009
felony complaint).    This is an event subsequently during his
May 17, 2010 Parole testimony and October 20, 2010 trial testimony
where he admitted he actually did not see. (Trial Transcripts on
page 109 at lines 5 to 22; Trial Transcripts on page 119 at lines
18 to page 120 line 17.

Officer Rosado's false information to Woods is what lead to said
Claimant's "intentional confinement".  It was intentional because
Rosado concoct a false version of events upon which the defendant
makes and arrest, files a complaint, and perpetuates at the crim-
trial of Claimant.  It was an intentional lie Rosado past on to
Officer Woods in order to create probable cause for an arrest that
otherwise would have never existed.   Claimant was "conscious" of
his confinement because defendants placed Claimant into their
custody by force or without his "consent".  Neither was claimant
arrest "privileged" or it was without probable cause.  There was
no warrant, no type of identification procedures conducted in
this case. (See People's Jan. 13,2010 VOLUNTARY DISCLOSURE FORM)
The only basis for an arrest was Officer Rosado's fabricated
story that he communicated to his partners Officer Woods and
Officer Marines which lead to the false versions of events upon
which defendant(s) arrested Claimant and stated in their complai-
nt(s), and upon which the entire prosection and trial was based.

19

In addition, throughout this entire case up to the eve of trial, defendant(s) Woods and Marines concoct a false version of events claiming that Claimant made the following statements:

"WHAT? OH FUCK." and "WHAT? WHAT HAPPENED? OH FUCK."(See People's Jan. 13, 2010 and March 20, 2010 VOLUNTARY DISCLOSURE FORM as confirmation of the above mentioned factor)

Subsequently on May 17, 2010 during Claimant's parole hearing proceedings, Officer Woods admitted that he lied in regards to his prior statement(that Claimant made the above mentioned said statements)when he testified that Claimant "made no statements". (See Parole Hearing Transcripts page 55 at lines 20 to 21 for confirmation of the above mentioned factor)

Officer Rosado's Great Lie--that he saw Claimant rub his erect penis against Ms. Maloney(cw)buttocks and that cw told him that it was Claimant that touched her buttocks by means of a point-out identification--was exposed very early on in the case. Once the felony complaint was withdrawn, to be replaced by misdemeanor complaint(s) alleging that Officer Rosado saw Claimant touch cw's buttocks with his "pelvis", the false nature of the or his prior statement became all too clear.

Indeed, Officer Woods and Marines's false story that Claimant made incriminating statements and Officer Rosado's false claim that he saw Claimant rub his erect penis against the CW's buttocks, as well as his Trial testimony that he "did not even see" Claimant rubbing himself against the CW at all, tend to confirm that Officer Rosado, Woods and Marines illegally targeted claimant for false arrest.

Surely, the evidence shows that defendant(s) arrested Claimant out of "bad faith", fraud, falsification and perjury all in vio-lation of the Fourth Amendment, the Search and Seizure Provision and the 14th Amendment, Due Process of the New York State and of the United States Consitution.

SECOND CAUSE OF ACTION
MALICIOUS   PROSECUTION

This cause of action will also show by means of the record that
each defendant maliciously prosecuted Plaintiff by commencing a
criminal action against Plaintiff on December 2, 2009 by means
of a felony complaint prepared by Officer Rosado Shield#21738,
at about 2130 hr. based on false information that on December 2,
2009, that a Ms. Maloney(CW), told him that Plaintiff rubbed his
erect penis into her buttocks on a down town 6 train between 68th
Street and 59th Street stations in the County of New York at ab-
out 18:30 hours.   Rosado also stated in said felony complaint
that he "observed the defendant(Plaintiff)engage in the above
described conduct".

Rosado also claimed throughout the entire 11 months of this case
(until the eve of trial)that Ms. Maloney made a point-out ID of
Plaintiff-Mr. Johnson and Officer Woods Shield#10226 and Officer-
Marines Shield#0628 claimed throughout the entire proceedings of
this case that plaintiff-Mr. Johnson made an "incriminating stat-
ement".   Until finally on October 18, 2010(right before trial
began), the District Attorney's Office informed the Trial Court
that:  "there was no statements nor ID evidence in this case" a
factor defendants all along knew of, which means they maliciously
fabricated those stories against Plaintiff or simply put, "they
lied".
The "continuance of this criminal proceeding" against Plaintiff
was by means of when said felony complaint was reduced to a mis-
demeanor complaint on December 8, 2009, also prepared by Officer
Rosado.   In this complaint Rosado gave up his false account
that Ms. Maloney told him(by means of a point-out ID)that Plain-
tiff-Mr. Johnson rubbed his erect penis into her buttocks.

21

Neither is Rosado claiming any further that he "observed the defendant-Mr. Johnson(Plaintiff in this civil case)rub his erect penis into Ms. Maloney's buttocks" as he falsely stated in his December 2, 2009 felony complaint which commenced the criminal action against Plaintiff.  But now, by means of said Dec. 8,09 misdemeanor complaint, Rosado is claiming a total different story, in that(amoung other things): "deponent-Rosado, observed defendant-Mr. Johnson standing behind CW(Ms. Maloney)and repatly rub his pelvis(no longer the penis but the hip area)against CW buttocks". Rosado also stated that when the train arrived at 42nd Street, that: "defendant-(Mr. Johnson)walked off the train and entered in-to another car of the train".  These are events that Rosado sub-sequently during trial admitted he did not see or in other words, Rosado concoct more false version of events in order to continue his malicious prosecution against Plaintiff.

Then we have Defendant-Officer Woods appearing on Rosado's behalf within said Dec. 8, 09 complaint with his false account claiming that he observed Plaintiff-Mr. Johnson standing behind a second female in the same manner as CW-Ms. Maloney, which couldn't have been so because Woods was duty bound to have arrested Plaintiff-Mr. Johnson on the spot had Woods seen Plaintiff comitt a crime right before his face.  However, Woods made no such arrest simply because(like his partner Rosado)he too concoct a false version of events in which to continue his malicious prosecution against Plaintiff.

Once the District Attorney Office saw that the misdemeanor com-plaint wasn't going to make the day for them, neither did they have any statements from CW-Ms. Maloney against Plaintiff within said Dec. 8, 09 misdemeanor complaint and the lower criminal Court stated on the record that it was incline to dismiss the case, the District Attorney's Office dropped the Dec. 8, 09 misdemeanor com-plaint like a hot potato.

22

Instead of dismissing the charges against Plaintiff contained within the Dec. 8, 2009 misdemeanor complaint as a result of Defendant(s)-Rosado and Woods fabricated and/or false accounts, Defendants decided to "continue" their malicious or ill willed prosecution against Plaintiff by means of a second misdemeanor complaint dated Jan. 19, 2010, also prepared by Officer Rosado.

This new misdemeanor complaint is also based on false information by Officer Rosado as well. In this complaint Rosado once again, gives another different story or false versions of events as regards to what took place on Dec. 2, 2009 and Woods false version of events as mentioned within said Dec. 8, 2009 misdemeanor complaint is deleted of any reference to Plaintiff-Mr. Johnson leaving the subway car, re-entering the train in a different car and touching a second female within the superseding Jan. 19, 2010 misdemeanor complaint.

As per Jan. 19, 2010 misdemeanor complaint page two, Officer-Rosado for the second time, is claiming that CW-Ms. Maloney ID Plaintiff-Mr. Johnson as the person that touched her buttocks with his "pelvis area"(or hip area) which cannot be true for the simple fact CW never made any ID against Plaintiff and there were no ID proceedures conducted in this case. In fact, the record shows that CW-Ms. Maloney's trial testimoney on Oct. 20,10, found on page 21 at line 20 to page 22 line 5 of the trial transcripts was that she identified the man standing behind her for the 30 sec. period "was a man wearing a YELLOWISH-BROWN WINTER COAT THAT EXTENDED TO HIS KNEES", where as Plaintiff-Mr. Johnson was wearing a BROWN LEATHER JACKET THAT EXTENDED ONLY TO HIS HIP AREA.

Therefore, because of what is mentioned above and herein, Rosado's sworn statement within the Jan. 19, 2010 misdemeanor complaint, in specific, the supporting deposition stating that a Kathleen - Maloney on Jan. 19, 2010 "identified Plaintiff-Mr. Johnson" as the "individual" that touched her buttocks with his "pelvis area", is confirmation that the Jan. 19,10 misdemeanor complaint is indeed fraudulent!

23

However, the continuance of defendant's malicious prosecution against Plaintiff continued when Officer Rosado and Marines presented their false versions of events during a grand jury proceeding on March 18, 2010 soon after the District Attorney's Office dropped the Jan. 19, 2010 misdemeanor complaint like another hot potato and for the first time(after about three months), presented the charge of forcible touching before the grand jury along with the charge of sexual abuse in the third degree.

This Court should take note that the entire grand jury and trial record of CW-Ms. Maloney's testimony, doesn't describe nor support the charge of forcible touching, which explains why such a charge never poped up until about "three months" after the charge of sex abuse in the third degree was first commenced against Plaintiff on December 2, 2009.

Then on May 17, 2010, defendant(s)-Rosado and Woods "continued" their malicious prosecution against Plaintiff by presenting their false versions of events before Plaintiff's Parole hearing, claiming once again, that they saw Plaintiff-Mr. Johnson standing behind CW-Ms. Maloney touching her buttocks with his pelvis, penis and or groin area, false versions of events once again, each defendant subsequently admitted during trial they did not see.

Then on August 6, 2010, Defendant(s)-Rosado and Woods once again presented their false versions of events before a second grand jury and finally got their indictment for forcible touching, but the charge of sex abuse in the third degree was terminated in Plaintiff's favor where as he was acquitted of that charge under indictment#3778/2010(which is the charge that was commenced against Mr. Johnson-Plaintiff in the first place).

It took "11 months" from December 2, 2009 to October 20, 2010
for Plaintiff to get acquitted of the charge of sex abuse in the
third degree(PL 130.55), a charge Plaintiff was begging the
lower Courts to dismiss based on the many false version(s) of
events or stories that was told by each defendant in this case,
in which they used to commence and continue this case against
Plaintiff.

The "actual malice" of this case is proven by means of the many
lies and different stories each defendant told in this case,
which shows that it was never defendant's aim to meet the ends
of justice in this case, but to get a parole violation and con-
viction by any means, in which they did.  Because up to this
present day, Plaintiff is suffering from a "post-arraignment de-
privation of liberty" and must take the Sex Offender Program
once again, as a result of a parole violation based on the mal-
icious lies told by Rosado and Woods.

It was also also malicious prosecution by said defendants against
Plaintiff in that they "knew or should have known" as officers
acting under color of law supposedly trained and employed by
Defendant-THE CITY OF NEW YORK by means of it's POLICE DEPT.(N-
YPD)and acting in the course of their employment as police off-
icers at the time of the event(6:30 PM), that they illegally ap-
proached, detained and arrested Plaintiff in the absence of pro-
bable cause or reasonable suspicion that he committed a crime.
But instead, creating a false account that Officer Rosado, Woods,
Marines "saw" Plaintiff commit the act of sex abuse in the third
degree and forcible touching under indictment# 3778-2010 by rub-
bing his erect penis against a female's buttocks on a crowded
number 6 train.  This is a claim and false account that each
defendant stuck by from "arraignment" of this case(Dec. 3,2009)
to the time each defendant admitted they didn't witness a crime.

For instance, during the Plaintiff's May 17, 2010 Parole hearing, Officer Woods-Defendant, stated in quote:

"From when the train pulled in, I couldn't tell if he was rubbing against her" (Parole Transcripts page 59 at lines 10 to 19)

Yes, the record above shows that Officer Woods admitted that he "did not see" a crime being committed as the train was pulling into the 59th Street station on December 2, 2009.

As for Defendant-Offer Rosado, he finally admitted to the truth that he "did not see" see Plaintiff-Mr. Johnson committ a crime as the 6 train was pulling into the 59th Street train station **when he stated in quote** during said October 20, 2010 trial:

"I did not witness the man on top of the female with his groin area rubbing on top of the female". (Trial Transcripts page 109 at lines 20 to 28). In addition, when defense counsel asked Rosado(during trial) "did he actually see the man committing a sex offense, Rosado stated in quote: "NO."(Trial Transcripts pg 109 at lines 5 to 22)   This fact is also confirmed by Rosado's trial testimony found on pages 78 to 80 and 126 to 127 at line 1, where he stated in quote: "Throughout the entire subway ride that I saw them(CW-Ms. Maloney and her friend)from 59th Street to Grand Central, she was actually having a conversation or speaking with her friend." That time period from 59th St. to Grand Central Station that Rosado said he first saw CW and her friend speaking with eachother and kept his eye on her all the way until the train reached Grand Central Station, was a time period that made it impossible for each defendant to have seen Plaintiff-Mr. Johnson standing behind Ms. Maloney as they falsey claimed, because that was a time period when the 30 sec. inccident had already ended as confirmed by CW said testimoney that the inccident ended at 68th St. when she moved away from the man over to where her friend was and they began speaking with eachother just as Rosado had stated.

The record clearly shows by means of Rosado's August 6, 2010 grand jury testimony(found on page 56 at lines 18 to 23 of the grand jury transcripts)why each defendant targeted Plaintiff- Mr. Johnson for false arrest and malicious prosecution, simply because they "recognized him" as a sex offender, where Rosado stated in quote after being asked the following question:

"Officer Rosado, on the 59th Street platform when the train was coming into the station before you got on, did you re- cognize Mr. Johnson at that point?"    ROSADO: "Yes, I saw-- recognized him as who he was."

Once again, the record of evidence shows that each defendant arrested Plaintiff out of "bad faith", fraud, falsification, perjury and because they "recognized" Plaintiff as a sex off- ender having a prior criminal record.  All in violation of the Fourth Amendment, the Search and Seizure Provision and the 14th Amendment, Due Process of Law of the New York State and of the United States Constitution(s).

THIRD CAUSE OF ACTION

(IIED)INTENTIONAL INFLICTION OF

EMOTIONAL DISTRESS

It was an extreme and outrageous conduct by the Defendant-The
City of New York and it's NYPD employees Officers Rosado,Woods
and Marines, when refusing to drop or dismiss the December 2,
2009 felony complaint, December 8, 2009 misdemeanor complaint,
Jan. 19, 2010 misdemeanor complaint and both the March and Aug-
ust 2010 grand jury proceedings against Plaintiff, knowing that
such complaints and proceedings were based on pure fabricated
stories in order to create probable cause for the arrest of
Plaintiff and for the malicious prosecution of him for a total
of about one year(from Dec. 2009 to October 22,2010).  The
continuenace of this case against Plaintiff was with the "in-
tent" to cause severe emotional distress upon Plaintiff by said
defendants because from the commencement of this case defendants
recognized Plaintiff as a known sex offender with a previous
criminal record whom they wanted to punish at the time of the
arrest.   As a result of Defendant-The City of New York allow-
ing such extreme and outrageous mis-conduct of said false arr-
est and malicious prosecution by Officers Rosado, Woods and
Marines against Plaintiff, caused such damages or injuries of:
loss of liberty and freedom because of a Parole violation and
parole hold until Plaintiff's PRS Max date runs out; being sub-
jected to re-take the Sex Offender Program; severe harm to dig-
nity; disalienation of affection as to Plaintiff spouse because
of being prevented from being with his wife.

Damages also include loss property, employment opertunities as a skilled Data Entry Operator, loss of time spent with daughter. Plaintiff also suffered server emotional distress when he was placed in the SHU(BOX)by staff at the Gowanda Correctional Facility for a total of six months for having a slice of meatloaf in his locker and while in the Box, Plaintiff was fed nothing but bread(and the bread was frozen)for a period of 4 days. By the time Plaintiff was release from the Box(which was Jan. 27, 2012), Plaintiff was weighing only 164 pounds, coming from 205 pounds standing about six feet tall.  For a person like Plaintiff at the age of 53 years old, living under those extreme conditions and losing that much weight, was severely stressful physically, mentally and emotionally.  All as a result of said defendant(s) extreme and outrageous mis-conduct against Plaintiff.  (Subsequently, Plaintiff filed a grievance in regards to the six month Box time and frozen bread issue).  All of which caused severe emotional distress, anguish and the wrongful misappropriation of Plaintiff's very life by the State.

FOURTH CAUSE OF ACTION

THE CITY OF NEW YORK SHOULD BE HELD LIABLE FOR THE
NEGLIGENT TRAINING OF IT'S NYPD EMPLOYEES WHICH
LEAD TO THE FALSE ARREST AND MALICIOUS PROSECUTION
AND THE SEVERE ANGUISH AND EMOTIONAL DISTRESS THAT
DISPLAYED AGAINST PLAINTIFF

The City of New York-Defendant, have an existing unconstitutional
municipal policy of not properly training it's NYPD employees to
recognize when a true sex offense of sex abuse in the third de-
gree and forcible touching is taking place on a crowded public
train.
The City of New York also have a policy of allowing it's NYPD
employees to falsely arrest a person(rather it be a convicted
sex offender or not)without the City properly investigating the
matter once a charge of sex abuse in the third degree and forc-
ible touching ends up dismissed in favor of a defendant.  Such
as in the case at bar, Plaintiff have numerous of those mentioned
cases that were dismissed in his favor, including the case at bar,
which he was acquitted of(sex abuse in the third degree that is).

In each case dismissed in favor of Plaintiff, the City of New

York failed to conduct a proper investigation in order to correct
any wrong doing or misconduct by it's NYPD employees in order to
properly train them to identify when a true sex abuse in the 3rd
degree and/or forcible touching offenses are taking place on a
public crowded train.

30

Therefore, it should be of no surprise when the City of New York
NYPD employees Officer Rosado,Woods and their Supervisor Marines
as a result of their lack of training by the City, committed the
extreme and outrageous misconduct against Plaintiff when they
violated his substantive federal and state constitutional due
process rights, and committed the common law torts of false arr-
est, malicious prosecution and the intentional infliction of em-
otional distress against Plaintiff as mentioned throughout this
entire causes of actions and complaint.

Therefore, it could be said, because of the extreme and outrag-
eous misconduct by Officer Rosado, Woods and Marines by means of
their false testimonies against Plaintiff(as mentioned herein and
throughout this complaint), and as a result of their lack of
training by the City of New York-Defendant, it is the City of New
York's "policy to condone" police mis-conduct by it's NYPD emplo-
yees.   Therefore, the City of New York should be held liable for
damages, because the City of New York violated Plaintiff's const-
itutional and common laws by it's negligent training of police
officers with respect to the investigation of sex abuse cases on
crowded public trains that were dismissed in favor of a defendant
but never the less such charges are used against a person and the
dismissed cases remains on a person's criminal record, such as in
the case at bar.  The City violated Plaintiff's constitutional
and common law rights by it's "actual awareness" that police off-
icers of the NYPD had wrongfully arrested Plaintiff on prior occ-
asions for sex abuse crimes he never committed, but acquiesced in
and allowed such police mis-conduct to be repeated on December 2,
2009.

AS AND FOR A FOURTH CLAIM FOR RELIEF

Plaintiff repeats each and every allegation contained in
Paragraphs 1 through 79 of page 16 which includes the
causes of actions proven upon the record from page 18 to
31, as if set forth again at length.

As a result of Officer Rosado and Woods false testimonies
during Plaintiff's May 17, 2010 Parole hearing which re-
sulted in Plaintiff's present incarceration because of a
parole violation, Plaintiff is required to re-take the
Sex Offender Program.   The Program is required because
the false allegations made by Rosado and Woods are now
part of Plaintiff's institutional record as re-offending
when he was released on parole or PRS.   Wherefore, said
Plaintiff is asking that this Court grant him an addit-
ional permanent injunction relief to wipe off Plaintiff's
institutional record any and all false statements made by
defendants Roado and Woods which caused Plaintiff to have
re-take the S.O. Program.

WHEREFORE, the Plaintiff Pro Se, Ted Johnson, respectfully pray for
the entry of Judgment of directing DOCS(by means of equitable relief)
to wipe his institutional record clean for all the reasons mentioned
herein and above.

By reason of the foregoing, Plaintiff is entitled to compensatory damages of $1,000,000 from the individual Defendants, punitive damages in the sum of $10,000,000 from Defendant Rosado, punitive damages in the sum of $5,000,000 from Defendant Marines, and punitive damages in the sum of $2,500,000 from Defendant Woods.

WHEREFORE, the Plaintiff Pro Se, Ted Johnson, respectfully prays for the entry of Judgment as follows:    Defendant-City pay 3,000,000 for:

a.  compensatory and punitive damages as set forth above;

b.  the entry of a permanent injunction for the reasons set forth above;

c.  the appointment of a Court-appointed monitor for the reasons set forth above; and

d.  the expunging from Plaintiff's DOCS institutional record any and all references to any and all criminal acts allegedly committed by Plaintiff on December 2, 2009 as falsely sworn to by the individual Defendants between December 3, 2009 and October 22, 2010; and

e.  such other and further relief that this Court shall deem to be just, proper and equitable.

Yours, etc.,

TED JOHNSON
DIN 03 A 4407
Plaintiff Pro Se
Shawangunk Correctional Facility
PO Box 700
Wallkill, NY 12589-0700

TO: THE CITY OF NEW YORK
c/o NYC Law Department
100 Church Street
New York, NY 10007

POLICE OFFICER ANTHONY ROSADO  SHIELD# 21738
NYPD, Transit District 4
Union Sq. Subway Station
New York, NY

POLICE OFFICER THOMAS WOODS  SHIELD# 10226
NYPD, Transit District 4
Union Sq. Subway Station
New York, NY

SGT. LUIS MARINES  SHIELD# 0628
NYPD, Transit District 4
Union Sq. Subway Station
New York, NY

I declare under penalty of perjury that the foregoing is
true and correct and that no other relief was taken in
relation to this case.

Signed 25th DAY OF April, 2012

Ted Johnson 03A4407

34

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK )
COUNTY OF          ) ss.:

I, _Ted Johnson_____, being duly sworn, deposes and say:

That on the below indicated date of notarization, I served true and accurate copies of
1 Original + 4 Copies of;
the attached/enclosed: A 34 Page Section 1983 Complaint;
A one Page Cover letter dated 4-25-2012;
Request To Proceed in Forma PAUPERis and Civil Cover Sheet

To the following person(s) at the following address(es):

United States District Court
Southern District of New York
Pro Se Office
500 Pearl Street
New York, N.Y. 10007-1312
Attn: Chief of Clerk of Court

By sealing the same in a properly addressed, postage prepaid wrapper and by depositing same

in a mailbox at the _Shawangunk_ Correctional Facility to be mailed via United

States Mail, 4/25/2012

Ted Johnson
03A4407 B2 242
Shawangunk Corr. Fac.
P.O. Box 700
Wallkill, New York
12589

Subscribed and sworn to before me this

25 day of April , 20 12

NOTARY PUBLIC
Notary Public in the State of New York
Qualified in Orange County #01PE6211056
My Commission Expires on Sept 8, 2015